**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

PINK FLOYD (1987) LIMITED,

      Plaintiff,                       Civil Action No.: 1:24-cv-04711

v.                               Judge Matthew F. Kennelly

THE OWNER AND/OR OPERATOR OF    Magistrate Judge Sheila M. Finnegan
PINKFLOYDMERCH.COM,

      Defendant.

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY OF
A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION,
A TEMPORARY TRANSFER OF THE DOMAIN NAME, A TEMPORARY ASSET
RESTRAINT, EXPEDITED DISCOVERY, AND SERVICE OF PROCESS BY E-MAIL
<u>AND/OR ELECTRONIC PUBLICATION</u>**

        Plaintiff, Pink Floyd (1987) Limited ("PFL" or "Plaintiff"), submits this Memorandum in

support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order, including a temporary

injunction, a temporary transfer of the domain name identified as pinkfloydmerch.com, a temporary

asset restraint, expedited discovery, and service of process by email and/or electronic publication (the

"*Ex Parte* Motion").

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................1

II.  STATEMENT OF FACTS...................................................................................................3

    A. Plaintiff's Trademarks and Products.........................................................................3

    B. Defendant's Unlawful Activities ..............................................................................4

III. ARGUMENT ......................................................................................................................5

    A. This Court May Exercise Personal Jurisdiction over Defendant.............................6

    B. Standard for Temporary Restraining Order and Preliminary Injunction ..............7

    C. Plaintiff Will Likely Succeed on the Merits ...........................................................8

        i.   *Plaintiff Will Likely Succeed on Its Trademark Infringement and Counterfeiting Claim* 8

        ii.  *Plaintiff Is Likely to Succeed on Its False Designation of Origin Claim*.......................12

        iii. *Plaintiff Is Likely to Succeed on Its Cybersquatting Claim* ...........................................13

    D. There Is No Adequate Remedy at Law and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief ................................................................15

    E. The Balancing of Harms Tips in Plaintiff's Favor ..................................................16

    F. Issuance of the Injunction Is in the Public Interest.................................................17

IV.  THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE............................................18

    A. A Temporary Restraining Order Immediately Enjoining Defendant's Unauthorized and Unlawful Use of Plaintiff's Marks Is Appropriate ................19

    B. Transferring the Defendant Domain Name to Plaintiff's Control is Appropriate 19

    C. Preventing the Fraudulent Transfer of Assets Is Appropriate ..............................20

    D. Plaintiff Is Entitled to Expedited Discovery ..........................................................22

    E. Service of Process by E-mail and/or Electronic Publication Is Warranted in this Case ...........................................................................................................23

V.   A BOND SHOULD SECURE THE INJUNCTIVE RELIEF...........................................27

VI.  CONCLUSION ................................................................................................................27

# TABLE OF AUTHORITIES

<u>Cases</u>

*Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992) ................................................ 8

*All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.,* 2013 WL 1701871, *10 (C.D. Ill.
    Apr. 18, 2013) ......................................................................................................................... 12

*Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007) .................. 20, 21

*Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 Fed. Appx. 252, 256, 2006, WL 2847233, at *3
    (11th Cir. 2006) ....................................................................................................................... 13

*Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) ........................................ 17

*CAE, Inc. v. Clean Air Eng'g Inc.,* 267 F.3d 660, 681 (7th Cir. 2001) ............................................ 10

*Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1
    (N.D. Ill. May 15, 2001) ............................................................................................................ 8

*Christian Dior Couture, S.A. v. Liu*, 2015 U.S. Dist. LEXIS 158225 (N.D. Ill. Nov. 17, 2015) ......... 7

*Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) ........................... 6

*CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002) ............................................................ 21

*Curry v. Revolution Labs., LLC,* 949 F.3d 385, 399 (7th Cir. 2020); .................................................. 7

*Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940) ......................................................... 21

*Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 381 (7th Cir. 1996) ........................................... 10

*Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 461, 462, 469 (7th Cir. 2000) ..... 8, 10, 15, 17

*Ford Motor Co. v. Greatdomains.com, Inc.*, 177 F. Supp. 2d 635, 642 (E.D. Mich. 2001) ......... 13, 14

*G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 999 (7th Cir. 1989) ........... 10

*Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis,* 35 F.3d 1134, 1140 (7th Cir.
    1994) ......................................................................................................................................... 16

*Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) .................................................................. 22

*Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308 (1999) ........................... 21

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411, 421 (4th Cir. 1999) ........................... 27

*In re LDK Solar Secs. Litig.,* 2008 WL 2415186,*2 (N.D. Cal. Jun. 12, 2008) ............................... 26

*In re Potash Antitrust Litig.,* 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009) ........................................ 26

*James Burroughs Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976) .................. 18

*Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,* 188 F. 3d 427, 436 (7th Cir. 1999) .......... 12

*Juniper Networks, Inc. v. Bahattab*, No. 1:07-cv-01771-PLF-AK, 2008 WL 250584, *1-2, (D.D.C.

    Jan. 30, 2008) .................................................................................................................... 25

*Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994) ........................... 17

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) ................. 20, 21

*Libman Co. v. Vining Indus., Inc.*, 69 F.3d 1360, 1363 (7th Cir.1995) .............................................. 11

*Lorillard Tobacco Co. Montrose Wholesale Candies*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8,

    2005) .................................................................................................................................... 21

*MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*, No. 1:08-cv-02593, 2008 WL 5100414, *2

    (N.D. Ill. Dec. 1, 2008) ...................................................................................................... 25

*Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C.

    1996). .................................................................................................................................. 17

*Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.,* 128 F.3d 1111, 1114 (7th Cir. 1997) ............ 15

*Monster Energy Co. v. Chen Wensheng*, 2015 U.S. Dist. LEXIS 132283 (N.D. Ill. Sept. 29, 2015) .. 7

*Mori Lee v. Lei Liu et al., No. 19-cv-07555 at [60] (N.D. Ill. May 14, 2020)* ..................................... 7

*Nanya Tech. Corp. v. Fujitsu Ltd.*, No. 1:06-cv-00025, 2007 WL 269087, *6 (D. Guam Jan. 26,

    2007) .................................................................................................................................... 27

*NBA Properties, Inc. v. HANWJH,* No. 21-2909, 2022 WL 3367823, at *7 (7th Cir. Aug. 16, 2022) 7

*Neopost Industrie B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) .................... 9, 12

*Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380 (1978) ................................. 22

*Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir. 1961) ................................ 9

*Polo Fashions, Inc. v. Craftex, Inc.,* 816 F.2d 145, 148 (4th Cir.1987) ............................................. 10

*Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 563 (E.D. Tenn. 2004).. 25, 27

*Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) ............................. 16

*Purdue Research Found. v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) .................... 6

*Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) .................................................... 15

*Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) ........................ 20, 21

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) ............................... 24, 25

*Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 960 (7th Cir. 1992) ........................ 11

*Shashi, Inc. v. Ramada Worldwide, Inc.,* No. 7:05-cv-00016-JGW-mfu, 2005 WL 552593, *4 (W.D. Va. Mar. 1, 2005) ................................................................................................................... 18

*Skechers U.S.A., Inc. II v. The Partnerships and Unincorporated Associations d/b/a The Domain Names and Internet Stores Identified on Schedule A*, No. 23-cv-15787 (N.D. Ill. Nov. 12, 2023)  2, 19, 21

*Stahly, Inc. v. M.H. Jacobs Co.,* 183 F.2d 914, 917 (7th Cir. 1950) ................................................... 18

*Tommy Hilfiger Licensing LLC, et al. v. calvinklein.us.org, et al.*, No. 20-cv-07477 at [46] (N.D. Ill. March. 24, 2021) ........................................................................................................................ 7

*Topps Co., Inc. v. Gerrit J. Verburg Co.*, 41 U.S.P.Q.2d 1412, 1417 (S.D.N.Y.1996) ....................... 9

*Trans Union LLC v. Credit Research, Inc.,* 142 F. Supp. 2d 1029, 1043 (N.D. Ill. 2001) ................ 11

*Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001) ........................................... 8, 17

*uBID, Inc. v. GoDaddy Group, Inc.,* 623 F.3d 421, 423 (7th Cir. 2010) ............................................ 6

*Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) ............... 22

*Victoria's Cyber Secret LTD. P'ship v. V Secret Catalogue, Inc.*, 161 F. Supp. 2d 1339, 1351 (S.D. Fla. 2001) ...................................................................................................................... 13, 14

*Vineyard House, LLC v. Constellation Brands United States Operations, Inc.*, No. 4:19-cv-01424-YGR, 2021 U.S. Dist. LEXIS 15702, at *36-37 n.16 (N.D. Cal. Jan. 26, 2021) .......................... 15

*Wesley–Jessen Division of Schering Corp. v. Bausch & Lomb Inc.*, 698 F.2d 862, 867 (7th Cir.1983) ...................................................................................................................................... 16

*Wham-O-Holding, Ltd. et al v. The Partnerships and Unincorporated Associations Identified on Schedule A,* No. 23-cv-05527 (N.D. Ill. Aug. 17, 2023) .................................................... 2, 19, 22

<u>Statutes</u>

15 U.S.C. § 1051 et seq ................................................................................................................... 6

15 U.S.C. § 1114(1) ........................................................................................................................ 9

15 U.S.C. § 1117(a) ................................................................................................................. 3, 20

15 U.S.C. § 1125(a) ...................................................................................................................... 12

15 U.S.C. § 1125(d) ................................................................................................................ 13, 14

28 U.S.C. § 1331 ............................................................................................................................. 6

28 U.S.C. § 1391 ............................................................................................................................. 6

28 U.S.C. §§ 1338(a)-(b) ............................................................................................................... 6

735 ILCS 5/2-209(a)(2) .................................................................................................................. 7

Fed. R. Civ. P. 26(b)(2) ................................................................................................................ 22

Fed. R. Civ. P. 4 .......................................................................................................... 23, 24, 25, 27

Fed R. Civ. P. 65 ................................................................................................................... *passim*

<u>Other Authorities</u>

*4 Callmann on Unfair Competition, Trademarks and Monopolies* § 88.3(b) at 205 (3d ed. 1970) ... 16

House Judiciary Committee Report on H.R. 3028, H.R. Rep. No. 106-412 p. 13 (October 25, 1999)

..................................................................................................................................... 15

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:40 (4th ed. 2013) ... 21

<u>**MEMORANDUM OF LAW**</u>

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff brings this action against the owner and/or operator of pinkfloydmerch.com ("Defendant") for federal trademark infringement and counterfeiting (Count I), false designation of origin (Count II), and cybersquatting (Count III). As alleged in the Complaint, Defendant is promoting, advertising, marketing, distributing, offering for sale, and selling counterfeit products in connection with Plaintiff's federally registered trademarks (collectively, the "Counterfeit PINK FLOYD Products"), through at least the fully interactive e-commerce store (the "Defendant Internet Store") operating under the domain name pinkfloydmerch.com to the Complaint (the "Defendant Domain Name"). In short, Defendant runs a counterfeiting operation with disregard for anything except generating profits. Plaintiff has filed this action to combat Defendant's infringement and counterfeiting of Plaintiff's registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit PINK FLOYD Products over the internet.

This Court has personal jurisdiction over Defendant because Defendant targets Illinois residents and has offered to sell, has sold, and continues to sell Counterfeit PINK FLOYD Products to consumers within the United States, including the State of Illinois. Specifically, Defendant is reaching out to do business with Illinois residents by operating a commercial, interactive internet store doing business as the Defendant Internet Store using the Defendant Domain Name, through which Illinois residents can and do purchase products being sold in connection with Plaintiff's PINK FLOYD Trademarks. Defendant directly targets unlawful business activities toward consumers in Illinois, causes harm to Plaintiff's business within this judicial district, and has caused and will continue to cause irreparable injury to Plaintiff. Defendant deceives the public by trading upon Plaintiff's reputation and goodwill and by using its commercial, interactive online

1

store operating under the Defendant Domain Name, to sell and/or offer for sale unlicensed Counterfeit PINK FLOYD Products in connection with Plaintiff's PINK FLOYD Trademarks.

Defendant's ongoing unlawful activities should be restrained, and Plaintiff respectfully requests that this Court issue an *ex parte* Temporary Restraining Order. Specifically, Plaintiff seeks an order to: (1) temporarily restrain Defendant's continued manufacture, importation, distribution, offering for sale, and sale of Counterfeit PINK FLOYD Products, (2) temporarily restrain Defendant's assets to preserve Plaintiff's right to an equitable accounting, and (3) a temporary transfer of the Defendant Domain Name to Plaintiff. Ancillary to and as part of the TRO, Plaintiff respectfully requests that this Court (4) authorize expedited discovery allowing Plaintiff to inspect and copy Defendant's records relating to the manufacture, distribution, offering for sale, and sale of Counterfeit PINK FLOYD Products and Defendant's financial accounts; and (5) authorize service by electronic mail and/or electronic publication.

In light of the covert nature of offshore counterfeiting activities and the vital need to establish an economic disincentive for trademark infringement, courts regularly issue such orders. *See, e.g., Skechers U.S.A., Inc. II v. The Partnerships and Unincorporated Associations d/b/a The Domain Names and Internet Stores Identified on Schedule A*, No. 23-cv-15787 (N.D. Ill. Nov. 12, 2023) and *Wham-O-Holding, Ltd. et al v. The Partnerships and Unincorporated Associations Identified on Schedule A,* No. 23-cv-05527 (N.D. Ill. Aug. 17, 2023) (granting *ex parte* Temporary Restraining Order); *In re Vuitton et Fils, S.A.*, 606 F.2d 1 (2d Cir. 1979) (holding that *ex parte* temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief).

Plaintiff's well-pleaded factual allegations, which must be accepted as true, and evidence submitted through declarations, establishes that issuing a temporary restraining order against

2

Defendant is necessary and proper. Plaintiff can demonstrate a strong likelihood of success on the merits. Plaintiff is the owner of the PINK FLOYD trademark registrations, and Defendant's use of Plaintiff's trademarks to sell Counterfeit PINK FLOYD Products is causing consumer confusion.

In addition, Defendant has and continues to irreparably harm Plaintiff through diminished goodwill and damage to Plaintiff's reputation. Monetary damages are inadequate to Plaintiff for these damages. This makes injunctive relief particularly appropriate in this matter.

Issuance of an injunction is also in the public interest because it will prevent confusion among the public and prevent unknowing consumers from being deceived into purchasing potentially harmful and dangerous Counterfeit PINK FLOYD Products.

Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as financial institutions, who are in active concert with the Defendant or who aid and abet Defendant and are given actual notice of the order. Similarly, a prejudgment asset freeze is also proper since Plaintiff seeks an equitable remedy in the accounting of Defendant's profits pursuant to 15 U.S.C. § 1117(a). Finally, an order authorizing service of process by email and/or electronic publication is proper since as a result of Defendant's intentional efforts to conceal their identities and operate its business online. Serving Defendant electronically is the best method for notifying them of this action and providing it the opportunity to defend and present their objections.

## II.     STATEMENT OF FACTS

### A.  Plaintiff's Trademarks and Products

PFL is the business entity for the iconic band PINK FLOYD. PINK FLOYD has been in existence since 1965 and was inducted into the Rock & Roll Hall of Fame in 1996. Plaintiff is the official source of authentic, high-quality, PINK FLOYD brand products. *See* Declaration of

Thomas Schlegel (the "Schlegel Declaration") at ¶¶ 4-5. Long before Defendant's acts described herein, Plaintiff launched its PINK FLOYD brand products. Plaintiff is the owner of several trademark registrations for the PINK FLOYD trademarks (the "PINK FLOYD Trademarks"). *Id.* at ¶ 6. The U.S. registrations for the PINK FLOYD Trademarks are valid, subsisting, and in full force and effect. *Id.* at ¶ 7. True and correct copies of the federal trademark registration certificates for the PINK FLOYD Trademarks are attached to the Schlegel Declaration as Exhibit 1. The PINK FLOYD Trademarks are distinctive and identify the merchandise as goods from Plaintiff. *Id.* at ¶ 8. The registrations for the PINK FLOYD Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive rights. The PINK FLOYD Trademarks have been continuously used and never abandoned. *Id.* at ¶ 8. Plaintiff has expended time, money, and other resources in developing, advertising, and otherwise promoting the PINK FLOYD Trademarks. *Id.* at ¶ 10. As a result, products bearing the PINK FLOYD Trademarks are recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff. *Id.*

**B. Defendant's Unlawful Activities**

The success of the PINK FLOYD brand has resulted in it being counterfeited. *Id.* at ¶ 11. Plaintiff has identified a fully interactive commercial internet store operating under the Defendant Domain Name, which is offering for sale, selling, and importing Counterfeit PINK FLOYD Products to consumers in this judicial district and throughout the United States. *Id.* Nearly 90 percent of all intellectual property seizures occur in the international mail and express environments with the majority of seizures originating from Asia. Declaration of Keith A. Vogt (the "Vogt Declaration") at ¶ 2. According to an intellectual property rights seizures statistics reports issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government exceeds $3.3 billion. *Id.* Internet websites like the Defendant

4

Internet Store are also estimated to contribute to millions of lost jobs for legitimate businesses. *Id.* at ¶ 3.

## III.    ARGUMENT

Defendant's purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff's reputation and the goodwill symbolized by the PINK FLOYD Trademarks. To stop Defendant's sale of Counterfeit PINK FLOYD Products, Plaintiff respectfully requests that this Court issue a temporary restraining order. Without the relief requested by Plaintiff's instant Motion, Defendant's unlawful activity will continue unabated, and Plaintiff and consumers will suffer irreparable harm.

Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The Defendant here fraudulently promotes, advertises, offers to sell, and sells goods in connection with counterfeits of the PINK FLOYD Trademarks via the Defendant Domain Name. Defendant is creating a false association in the minds of consumers between the Defendant and Plaintiff by deceiving consumers into believing that the Counterfeit PINK FLOYD Products for sale on Defendant's website operating under the Defendant Domain Name is sponsored or endorsed by Plaintiff. The entry of a temporary restraining order is appropriate because it would immediately stop the Defendant from benefiting from its wrongful use of the PINK FLOYD Trademarks and preserve the status quo until such time as a hearing can be held.

In the absence of a temporary restraining order without notice, the Defendant can and likely will modify registration data and content, change hosts, redirect traffic to other websites in their control, and move any assets from U.S.-based accounts to offshore accounts outside the jurisdiction of this Court. Courts have recognized that civil actions against counterfeiters present

special challenges that justify proceeding on an *ex parte* basis. S*ee Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Plaintiff respectfully requests that this Court issue the requested *ex parte* temporary restraining order. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

**A. This Court May Exercise Personal Jurisdiction over Defendant**

This Court may properly exercise personal jurisdiction over Defendant because Defendant directly targets business activities toward consumers in the United States, including Illinois, by directly offering for sale products into this judicial district as well as through at least the website operated at the Defendant Domain Name. Specifically, Defendant is reaching out to do business with Illinois residents by operating the website operated at the Defendant Domain Name through which Illinois residents can purchase products bearing counterfeit versions of the PINK FLOYD Trademarks. Defendant has targeted sales from Illinois residents by operating the fully interactive internet store operating under the Defendant Domain Name that offers shipping to the United States, including Illinois, has offered to sell, and has sold Counterfeit PINK FLOYD Products to consumers within the United States, including the State of Illinois. *See* Complaint at ¶¶ 2, 15. Without the benefit of an evidentiary hearing, plaintiff bears only the burden of making a prima facie case for personal jurisdiction; all of plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor. *See uBID, Inc. v. GoDaddy Group, Inc.,* 623 F.3d 421, 423 (7th Cir. 2010); *see also Purdue Research Found. v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) ("When determining whether a plaintiff has met his burden,

jurisdictional allegations pleaded in the complaint are accepted as true unless proved otherwise by defendants' affidavits or exhibits.").

Illinois courts regularly exercise personal jurisdiction over websites using registered trademark(s) without authorization in connection with the offering for sale and selling of infringing and counterfeit merchandise to Illinois residents over the internet. 735 ILCS 5/2-209(a)(2). Recently the Seventh Circuit concluded that personal jurisdiction is proper when a defendant purposefully directs its actions to Illinois via third-party online retailers, such as Amazon.com. *NBA Properties, Inc. v. HANWJH,* No. 21-2909, 2022 WL 3367823, at *7 (7th Cir. Aug. 16, 2022) ("[Defendant's] actions certainly can be characterized as purposeful. It established an online store, using a third-party retailer, Amazon.com. Through this online store, it unequivocally asserted a willingness to ship goods to Illinois and established the capacity to do so."); *See, e.g., Curry v. Revolution Labs., LLC,* 949 F.3d 385, 399 (7th Cir. 2020); *Tommy Hilfiger Licensing LLC, et al. v. calvinklein.us.org, et al.*, No. 20-cv-07477 at [46] (N.D. Ill. March. 24, 2021); *Christian Dior Couture, S.A. v. Liu*, 2015 U.S. Dist. LEXIS 158225 (N.D. Ill. Nov. 17, 2015); *Monster Energy Co. v. Chen Wensheng*, 2015 U.S. Dist. LEXIS 132283 (N.D. Ill. Sept. 29, 2015).

Through at least the fully interactive commercial internet website operating at the Defendant Domain Name, Defendant has targeted sales from Illinois residents by offering shipping to the United States, including Illinois, and, on information and belief, has sold Counterfeit PINK FLOYD Products to residents of the United States, including Illinois. Defendant is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

### B. Standard for Temporary Restraining Order and Preliminary Injunction

District Courts within this Circuit hold that the standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *See, e.g.,*

*Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, \*1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.* The sliding scale approach is not mathematical in nature, rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.* at 895-896. The greater the movant's likelihood of succeeding on the merits, the less the balancing of harms need be in his favor. *See Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 461 (7th Cir. 2000).

### C. Plaintiff Will Likely Succeed on the Merits

#### i. Plaintiff Will Likely Succeed on Its Trademark Infringement and Counterfeiting Claim

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, uses in commerce any reproduction, copy, or colorable

imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use[s] is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). To prove a *prima facie* case of infringement, a plaintiff must show (1) its mark is distinctive enough to be worthy of protection; (2) the defendant is not authorized to use the trademark; and (3) the defendant's use of the trademark causes a likelihood of confusion as to the origin or sponsorship of the defendant's products. *See Neopost Industries B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citation omitted). Plaintiff satisfies all three requirements of the Lanham Act to successfully bring a trademark infringement and counterfeiting claim.

Regarding the first two elements, Plaintiff's PINK FLOYD Trademarks are inherently distinctive and are registered with the United States Patent and Trademark Office on the Principal Register. The PINK FLOYD Trademarks have been continuously used. Schlegel Declaration at ¶¶ 6-9. The registrations for the PINK FLOYD Trademarks are valid, subsisting, and in full force and effect. *Id*. at ¶ 7. The registrations for the PINK FLOYD Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the PINK FLOYD Trademarks pursuant to 15 U.S.C. § 1057(b). Furthermore, Plaintiff has not licensed or authorized Defendant to use any of the PINK FLOYD Trademarks, and the Defendant is not an authorized retailer of genuine PINK FLOYD Products. *Id.* at ¶ 13.

Plaintiff satisfies the third factor, as well. Some courts do not undertake a factor-by-factor analysis under *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir. 1961) because counterfeits, by their very nature, cause confusion. *See Topps Co., Inc. v. Gerrit J. Verburg Co.*, 41 U.S.P.Q.2d 1412, 1417 (S.D.N.Y. 1996) ("Where the marks are identical, and the goods are also identical and directly competitive, the decision can be made directly without a more formal

9

and complete discussion of all of the Polaroid factors."); *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987) ("Where, as here, one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion.").

The Seventh Circuit, however, has enumerated seven factors to determine whether there is a likelihood of confusion: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and (7) intent of the defendants to palm off their products as that of another. *Eli Lilly*, 233 F.3d at 461-462 (citation omitted). These factors are not a mechanical checklist, and "[t]he proper weight given to each of [the] factors will vary from case to case." *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 381 (7th Cir. 1996). At the same time, although no one factor is decisive, the similarity of the marks, the intent of the defendants, and evidence of actual confusion are the most important considerations. *G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 999 (7th Cir. 1989).

In this case, Plaintiff plainly satisfies the likelihood of confusion test. Defendant is selling Counterfeit PINK FLOYD Products using a counterfeit mark identical to the PINK FLOYD Trademarks. As such, the first and second likelihood of confusion factors weigh heavily in favor of Plaintiff.

Plaintiff also satisfies the third factor, namely, the area and manner of concurrent use. When considering the third factor, a court looks at "whether there is a relationship in use, promotion, distribution or sales between the goods or services of the parties." *CAE, Inc. v. Clean Air Eng'g Inc.,* 267 F.3d 660, 681 (7th Cir. 2001). A court also looks to whether the parties used

the same channels of commerce, targeted the same general audience, and/or used similar marketing procedures. *Id*. Here, both Plaintiff and Defendant show the same products using the PINK FLOYD Trademarks to the same consumers. *See* Exhibit 2 to the Schlegel Declaration. Thus, because Defendant targets the same consumers as Plaintiff, this factor also weighs in favor of Plaintiff.

Regarding the fourth factor, degree of consumer care, potential consumers purchasing PINK FLOYD Products are not restricted to a certain specialized, sophisticated group of people. Rather, the consumer base is a diverse group of people. "[W]hen a buyer class is mixed, the standard of care to be exercised by the reasonably prudent purchaser will be equal to that of the least sophisticated consumer in the class." *Trans Union LLC v. Credit Research, Inc.,* 142 F. Supp. 2d 1029, 1043 (N.D. Ill. 2001) (citation omitted). As such, PINK FLOYD brand consumers are very likely to be confused, so this factor favors Plaintiff.

Due to their long-standing use and wide acceptance by the public, the PINK FLOYD Trademarks have become associated with high quality PINK FLOYD Products. The PINK FLOYD Trademarks are distinctive when applied to the PINK FLOYD Products. The marks signify to consumers that the products come from Plaintiff and are manufactured to quality standards. Thus, the fifth factor, the strength of the mark, also weighs heavily in favor of Plaintiff.

As for the sixth factor, Plaintiff does not need to prove likelihood of confusion with evidence of actual confusion; instead, it merely needs to show *some* evidence of potential confusion. *See Libman Co. v. Vining Indus., Inc.*, 69 F.3d 1360, 1363 (7th Cir.1995); *see also Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 960 (7th Cir. 1992) (the Seventh Circuit has consistently found that "plaintiff need not show actual confusion in order to establish likelihood of confusion."). In this case, actual confusion can be inferred because Defendant is

selling counterfeit PINK FLOYD Products in connection with the PINK FLOYD Trademarks. Because the goods are similar and have identical and similar uses, consumers will be confused and think that Defendant's products are genuine PINK FLOYD Products or are sponsored or endorsed by Plaintiff. This factor weighs in favor of Plaintiff.

Regarding the seventh and final factor, Defendant is intentionally using the PINK FLOYD Trademarks to confuse and deceive the consuming public into thinking that Defendant's Counterfeit PINK FLOYD Products are manufactured by or emanate from Plaintiff. Defendant is purposefully attempting to benefit and trade off Plaintiff's goodwill and reputation. Therefore, the final factor regarding Defendant's intent also weighs heavily in Plaintiff's favor.

In sum, each of the seven likelihood of confusion factors weighs heavily in favor of Plaintiff, and, therefore, Plaintiff has proved that it has a reasonable likelihood of success on the merits for its trademark infringement and counterfeiting claim.

### ii. Plaintiff Is Likely to Succeed on Its False Designation of Origin Claim

A plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must show that: (1) the plaintiff has a protectable trademark; and (2) a likelihood of confusion will exist as to the origin of plaintiff's products. *All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.,* 2013 WL 1701871, *10 (C.D. Ill. Apr. 18, 2013) (*citing Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,* 188 F. 3d 427, 436 (7th Cir. 1999)). This is the same test that is used for determining whether trademark infringement has occurred under the Lanham Act. *See Neopost*, 403 F. Supp. 2d at 684. Because the PINK FLOYD Trademarks are registered marks, and Plaintiff has established a likelihood of success on the merits of its trademark infringement and counterfeiting claim against Defendant (*supra*), a likelihood of success on the merits for Plaintiff's false designation of origin claim is also established.

12

<u>iii. Plaintiff Is Likely to Succeed on Its Cybersquatting Claim</u>

The Anticybersquatting Consumer Protection Act ("ACPA") protects the owner of a distinctive or famous trademark from another's bad faith intent to profit from the trademark owner's mark by registering or using a domain name which is identical or confusingly similar to, or dilutive of, the trademark owner's mark without regard to the goods or services of the parties. 15 U.S.C. § 1125(d). To prevail under 15 U.S.C. § 1125(d), Plaintiff must prove that (1) Plaintiff's Trademarks are distinctive or famous and entitled to protection; (2) the Defendant Domain Name is identical or confusingly similar to Plaintiff's Trademarks; and (3) Defendant registered or used the Defendant Domain Name with a bad faith intent to profit. *Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 Fed. Appx. 252, 256, 2006, WL 2847233, at *3 (11th Cir. 2006). The evidence submitted herewith satisfies the requirements of 15 U.S.C. § 1125 (d).

Defendant has registered a domain name which incorporates at least one of Plaintiff's trademarks in its entirety surrounded by descriptive or generic terms, rendering the domain name nearly identical as compared to Plaintiff's Trademarks (the "Cybersquatted Subject Domain Name." *See Victoria's Cyber Secret LTD. P'ship v. V Secret Catalogue, Inc.*, 161 F. Supp. 2d 1339, 1351 (S.D. Fla. 2001) ("The taking of an identical copy of another's famous and distinctive trademark for use as a domain name creates a presumption of confusion among Internet users as a matter of law."). Moreover, Courts have found that even slight differences between a domain name and a registered mark, such as the addition of minor or generic words to the disputed domain name, are irrelevant. *See Ford Motor Co. v. Greatdomains.com, Inc.*, 177 F. Supp. 2d 635, 642 (E.D. Mich. 2001) (holding "unless words or letters added to the plaintiff's mark within the domain name clearly distinguish it from the plaintiff's usage, allegations that a domain name incorporates a protected mark generally will suffice.").

13

The ACPA lists nine nonexclusive factors for courts to consider in determining whether a domain name has been registered or used in "bad faith" with an intent to profit from a mark in registering or using the mark in a domain name. *See* 15 U.S.C. § 1125(d)(1)(B)(i); *see also Victoria's Cyber Secret Ltd. P'ship*, 161 F. Supp. 2d at 1346. The nine factors are not meant to be exclusive, and the Court may consider all relevant factors in making a determination of bad faith. *Id.* at 1347. Ultimately, each factor addresses whether "the defendant's use of the disputed domain name is legitimate – i.e., for some purpose other than simply to profit from the value of the trademark." *Ford Motor Co.*, 177 F. Supp. 2d at 642. An examination of the bad faith factors compels the conclusion that Defendant's registration and use of the Cybersquatted Subject Domain Name violates 15 U.S.C. § 1125(d).

The first and third factors, § 1125(d)(1)(B)(I) and (III), are clearly present inasmuch as Defendant has no rights in Plaintiff's Trademarks and Defendant has never used those Trademarks in connection with a bona fide offering of goods or services. Additionally, the fourth, fifth, and ninth factors, § 1125(d)(1)(B)(IV), (V), (IX), weigh in Plaintiff's favor. As discussed above, Defendant has clearly intentionally incorporated one or more of Plaintiff's Trademarks in their Cybersquatted Subject Domain Name to divert consumers looking for Plaintiff's website to their own internet websites for commercial gain. Such consumers are likely to be confused as to the source and sponsorship of Defendant's internet websites and mistakenly believe the websites are endorsed by and/or affiliated with Plaintiff. This is especially true in light of the fact that the internet websites are offering for sale counterfeit PINK FLOYD branded goods. Clearly, Defendant's registration of the Cybersquatted Subject Domain Name in order to sell and offer for sale counterfeit and infringing PINK FLOYD branded goods, knowing the domain name is identical or confusingly similar to the Plaintiff's indisputably famous and distinctive marks,

ensures a likelihood of confusion among consumers. *See* House Judiciary Committee Report on H.R. 3028, H.R. Rep. No. 106-412 p. 13 (October 25, 1999) ("The more distinctive or famous a mark has become, the more likely the owner of that mark is deserving of the relief available under this act."). Thus, Plaintiff has shown a likelihood of success on the merits of its cybersquatting claim.

### D. There Is No Adequate Remedy at Law and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief

On December 27, 2020, Congress passed the Trademark Modernization Act of 2020 (codified as part of the Consolidated Appropriations Act, 2021, Pub. L. 116-260). The Act, *inter alia*, amended the text of 15 U.S.C. § 1116(a) codified a rebuttable presumption of irreparable harm which, as amended, now reads in relevant part:

> The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title. ***A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order***.

*See Vineyard House, LLC v. Constellation Brands United States Operations, Inc.,* No. 4:19-cv-01424-YGR, 2021 U.S. Dist. LEXIS 15702, at *36-37 n.16 (N.D. Cal. Jan. 26, 2021). Additionally, the Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir. 2000)); *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.,* 128 F.3d 1111, 1114 (7th Cir. 1997); *Wesley–Jessen Division of*

*Schering Corp. v. Bausch & Lomb Inc.*, 698 F.2d 862, 867 (7th Cir. 1983). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988); *see also 4 Callmann on Unfair Competition, Trademarks and Monopolies* § 88.3(b) at 205 (3d ed. 1970). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

The extent of the harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendant's infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (Finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law); *Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis,* 35 F.3d 1134, 1140 (7th Cir. 1994) ("[S]howing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages."). Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). Schlegel Declaration at ¶ 23. As such, Plaintiff should be granted preliminary relief.

### E.  The Balancing of Harms Tips in Plaintiff's Favor

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if

preliminary relief is not granted, then it must next consider the harm that Defendant will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895.

As willful infringers, Defendant is entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C. 1996).

As Plaintiff has demonstrated, Defendant has been profiting from the sale of Counterfeit PINK FLOYD Products. Thus, the balance of equities tips decisively in Plaintiff's favor. As such, equity requires that Defendant be ordered to cease its unlawful conduct.

### F. Issuance of the Injunction Is in the Public Interest

An injunction in these circumstances is in the public interest because it will prevent consumer confusion and stop Defendant from violating federal trademark law. The public is currently under the false impression that Defendant is operating the internet store at the Defendant Domain Name with Plaintiff's approval and endorsement. An injunction serves the public interest in this case "because enforcement of the trademark laws prevents consumer confusion." *Eli Lilly*, 233 F.3d at 469.

Federal courts have long held that "the trademark laws ... are concerned not alone with the protection of a property right existing in an individual, but also with the protection of the public

17

from fraud and deceit." *Stahly, Inc. v. M.H. Jacobs Co.,* 183 F.2d 914, 917 (7th Cir. 1950) (citations omitted). The public interest is further served by protecting "the synonymous right of a trademark owner to control his product's reputation." *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976); *see also Shashi, Inc. v. Ramada Worldwide, Inc.,* No. 7:05-cv-00016-JGW-mfu, 2005 WL 552593, *4 (W.D. Va. Mar. 1, 2005) ("It is in the best interest of the public for the court to defend the integrity of the intellectual property system and to prevent consumer confusion").

In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendant's actions. The public has the right not to be confused and defrauded as to the source of the goods and services offered by Defendant, or as to the identity of the owner of trademark and service mark used in connection with those goods and services. Unless Defendant's unauthorized use of the PINK FLOYD Trademarks is enjoined, the public will continue to be confused and misled by Defendant's conduct.

For these reasons, it is respectfully submitted that granting Plaintiff's Motion for Entry of a Temporary Restraining Order is in the public interest.

## IV.     THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

In addition to this Court's inherent authority to issue injunctive relief, the Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a). Furthermore, Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party

18

can be heard in opposition. Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as financial institutions, who are in active concert with the Defendant or who aid and abet the Defendant and are given actual notice of the order. Fed. R. Civ. P. 65. The facts in this case warrant such relief.

### A. A Temporary Restraining Order Immediately Enjoining Defendant's Unauthorized and Unlawful Use of Plaintiff's Marks Is Appropriate

Plaintiff requests a temporary injunction requiring the Defendant to immediately cease all use of the PINK FLOYD Trademarks or substantially similar marks on or in connection with the Defendant Domain Name. Such relief is necessary to stop the ongoing harm to the PINK FLOYD Trademarks and associated goodwill, as well as harm to consumers, and to prevent the Defendant from continuing to benefit from their unauthorized use of the PINK FLOYD Trademarks.

The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate over the internet in an anonymous fashion. Plaintiff is currently unaware of both the true identity and location of the Defendant used to distribute Counterfeit PINK FLOYD Products.

Many courts have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademark(s) and counterfeiting. *See, e.g., Skechers U.S.A., Inc. II v. The Partnerships and Unincorporated Associations d/b/a The Domain Names and Internet Stores Identified on Schedule A*, No. 23-cv-15787 (N.D. Ill. Nov. 12, 2023) and *Wham-O-Holding, Ltd. et al v. The Partnerships and Unincorporated Associations Identified on Schedule A,* No. 23-cv-05527 (N.D. Ill. Aug. 17, 2023).

### B. Transferring the Defendant Domain Name to Plaintiff's Control is Appropriate

As part of the TRO, Plaintiff also seeks temporary transfer of the Defendant Domain Name, pinkfloydmerch.com, in order to disable the counterfeit website and electronically publish notice of this case to Defendant. A defendant involved in domain name litigation easily can, and often

will, change the ownership of a domain name or continue operating the website while the case is pending. Accordingly, to preserve the status quo and ensure the possibility of eventual effective relief, courts in trademark cases involving domain names regularly grant the relief requested herein. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. Apr. 4, 2015) (unpublished). As such, Plaintiff respectfully requests that, as part of the TRO, the Court require the relevant registry and/or registrar for the Defendant Domain Name identified as pinkfloydmerch.com to transfer the Defendant Domain Name to Plaintiff.

### C. Preventing the Fraudulent Transfer of Assets Is Appropriate

Plaintiff requests an *ex parte* restraint of Defendant's assets so that Plaintiff's right to an equitable accounting of Defendant's profits from sales of Counterfeit PINK FLOYD Products is not impaired. Issuing an *ex parte* restraint will ensure Defendant's compliance. If such a restraint is not granted in this case, Defendant may disregard its responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, Defendant holds most of their assets in off-shore bank accounts outside the jurisdiction of this Court, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). In addition, Plaintiff has shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim, so according to the Lanham Act 15 U.S.C. § 1117(a)(1), Plaintiff is entitled, "subject to the principles of equity, to recover ... defendant's profits." Plaintiff's Complaint seeks, among other relief, that Defendant accounts for and pays to Plaintiff all profits

realized by Defendant by reason of Defendant's unlawful acts. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve the relief sought by Plaintiff.

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court, citing *Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308 (1999), recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano*, 527 U.S. at 325 (citing *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940)). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.; see also Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002) ("since the assets in question ... were the profits of the [defendants] made by unlawfully stealing [the plaintiffs'] services, the freeze was appropriate and may remain in place pending final disposition of this case."); *accord* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:40 (4th ed. 2013). In addition, courts in this district and across the country regularly issue asset-restraining orders for entire financial accounts in cases involving the sale of counterfeit products. *See, e.g., Skechers U.S.A., Inc. II v. The Partnerships and Unincorporated Associations d/b/a The Domain Names and Internet Stores Identified on Schedule A*, No. 23-cv-15787 (N.D. Ill. Nov. 12, 2023) and

*Wham-O-Holding, Ltd. et al v. The Partnerships and Unincorporated Associations Identified on Schedule A,* No. 23-cv-05527 (N.D. Ill. Aug. 17, 2023).

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendant's activities, and that, unless Defendant's assets are frozen, Defendant will likely hide or move its ill-gotten funds to offshore bank accounts. Accordingly, the granting of an injunction preventing the transfer of Defendant's assets is proper.

### D. Plaintiff Is Entitled to Expedited Discovery

The Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S. Ct. 2380 (1978)). A district court has wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

As described above, Defendant is using third-party payment processors such as Visa, PayPal, and Western Union, which helps to increase its anonymity by interposing a third party between the consumer and Defendant. Without being able to discover Defendant's bank and payment system accounts, any asset restraint would be of limited value because Plaintiff would not know the entities upon whom to serve the order.

Plaintiff respectfully requests expedited discovery to discover bank and payment system accounts Defendant uses for its counterfeit sales operations. The discovery requested on an expedited basis in Plaintiff's Proposed Temporary Restraining Order has been limited to include

22

only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained.

Under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third party who is in active concert with the Defendant that is given notice of the order to provide expedited discovery in this action. Fed. R. Civ. P. 65(d)(2)(C). Plaintiff's counsel is aware that the same third parties, in previous lawsuits, have worked with trademark owners and is not aware of any reason that Defendant or third parties cannot comply with these expedited discovery requests without undue burden. Further, all relevant third parties have in fact complied with identical requests in previous similar cases. More importantly, as Defendant has engaged in many deceptive practices in hiding their identities and accounts, Plaintiff's seizure and asset restraint in the Temporary Restraining Order may have little meaningful effect without the requested relief. Accordingly, Plaintiff respectfully requests that expedited discovery be granted.

### E. Service of Process by E-mail and/or Electronic Publication Is Warranted in this Case

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiff requests this Court's authorization to serve process by electronically publishing a link to the Complaint, the Temporary Restraining Order, and other relevant documents on a website, and/or by sending an e-mail to the e-mail addresses identified in Exhibit 2 to the Schlegel Declaration and any e-mail addresses provided for Defendant by third parties that includes a link to said website. Plaintiff submits that providing notice via electronic publication and/or e-mail, along with any notice that Defendant receives from payment processors, is reasonably calculated under all circumstances to apprise Defendant of the pendency of the action and afford it the opportunity to present its objections.

Electronic service is appropriate and necessary in this case because Defendant, on information and belief: (1) has provided a false name and physical address information in its

registrations for the Defendant Domain Name in order to conceal its location and avoid liability for its unlawful conduct; and (2) relies primarily on electronic communications to communicate with its registrars and customers, demonstrating the reliability of this method of communication by which the registrants of the Defendant Domain Name may be apprised of the pendency of this action. Authorizing service of process solely via e-mail and/or electronic publication will benefit all parties and the Court by ensuring that Defendant receives prompt notice of this action, thus allowing this action to move forward expeditiously. Absent the ability to serve Defendant in this manner, Plaintiff will almost certainly be left without the ability to pursue a final judgment.

Despite providing a false physical address, the registrants domain name, such as the Defendant Domain Name, must generally provide an accurate e-mail address so that their registrars may communicate with them regarding issues related to the purchase, transfer, and maintenance of the domain name. Likewise, online commercial website operators accepting PayPal, or similar accounts, must provide a valid email address to customers for completing payment. Moreover, it is necessary for merchants, such as the registrant of the Defendant Domain Name, who operate entirely online, to visit their online store to ensure it is functioning and to communicate with customers electronically. As such, it is far more likely that Defendant can be served electronically than through traditional service of process methods.

Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process by any means not prohibited by international agreement as the Court directs. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). The Ninth Circuit in *Rio Properties* held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." *Id.* at 1017. The Court reached this conclusion, in part, because the defendants

24

conducted their business over the internet, used e-mail regularly in their business, and encouraged parties to contact them via e-mail. *Id.*

Similarly, a number of Courts, including the Northern District of Illinois, have held that alternate forms of service pursuant to Rule 4(f)(3), including e-mail service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Id.* at 1018; s*ee also, e.g., the Counterfeit Website Cases, supra* at p. 28; *see also MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*, No. 1:08-cv-02593, 2008 WL 5100414, *2 (N.D. Ill. Dec. 1, 2008) (holding e-mail and facsimile service appropriate); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 563 (E.D. Tenn. 2004) (quoting *Rio*, 284 F.3d at 1018) (allowing e-mail service); s*ee also Juniper Networks, Inc. v. Bahattab*, No. 1:07-cv-01771-PLF-AK, 2008 WL 250584, *1-2, (D.D.C. Jan. 30, 2008) (citing *Rio*, 284 F.3d at 1017-1018; other citations omitted) (holding that "in certain circumstances ... service of process via electronic mail ... is appropriate and may be authorized by the Court under Rule 4(f)(3) of the Federal Rules of Civil Procedure").

Plaintiff submits that allowing service solely by e-mail and/or electronic publication in the present case is appropriate and comports with constitutional notions of due process, particularly given the decision by the registrant of the Defendant Domain Name to conduct its internet-based activities anonymously.

Furthermore, Rule 4 does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3). *Rio Props. v. Rio Intern. Interlink,* 284 F.3d 1007, 1014-15 (9th Cir. 2002). As the *Rio Properties* Court explained, Rule 4(f) does not create a hierarchy of preferred methods of service of process. *Id.* at 1014. To the contrary, the plain language of the Rule requires only that service

25

be directed by the court and not be prohibited by international agreement. There are no other limitations or requirements. *Id.* Alternative service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means among several by which international defendants may be served. *Id.* As such, this Court may allow Plaintiff to serve Defendant via electronic publication and/or e-mail. *See Monco v. Zoltek Corp.*, 2018 WL 3190817, at *4 (N.D. Ill. Apr. 24, 2018); *Strabala v. Zhang*, 318 F.R.D. 81, 115 (N.D. Ill. 2016); *See also Hangzhou Chic Intelligent Technology Co. et al. v. The Partnerships and Unincorporated Associations Identified on Schedule A,* 20-cv-04806 (N.D. Ill. April 1, 2021) (finding Hague Convention service is optional under Federal Rule of Civil Procedure 4.).

Additionally, Plaintiff is unable to determine the exact physical whereabouts or identity of the registrant of the Defendant Domain Name due to its provision of a false street address. Plaintiff, however, has good cause to suspect the registrant of the Defendant Domain Name is a resident of Asia. The United States and the People's Republic of China are both signatories to the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil and Commercial Matters (the "Convention"). Vogt Declaration at ¶ 7. The Hague Convention does not preclude service by email, and the declarations to the Hague Convention filed by China do not appear to expressly prohibit email service. *Id.* Additionally, according to Article 1 of The Hague Convention, the "convention shall not apply where the address of the person to be served with the document is not known." *Id*. at ¶ 8. As such, United States District Courts, including in this District, routinely permit alternative service of process notwithstanding the applicability of the Hague Convention. *See, e.g.*, *In re Potash Antitrust Litig.,* 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009) ("plaintiffs are not required to first attempt service through the Hague Convention."); s*ee also In re LDK Solar Secs. Litig.,* 2008 WL 2415186,*2 (N.D. Cal. Jun. 12, 2008) (authorizing alternative

means of service on Chinese defendants without first attempting "potentially fruitless" service through the Hague Convention's Chinese Central Authority); *Nanya Tech. Corp. v. Fujitsu Ltd.*, No. 1:06-cv-00025, 2007 WL 269087, *6 (D. Guam Jan. 26, 2007) (Hague Convention, to which Japan is a signatory, did not prohibit e-mail service upon Japanese defendant); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 562 (E.D. Tenn. 2004) (recognizing that, while "communication via e-mail and over the internet is comparatively new, such communication has been zealously embraced within the business community"). In addition, the law of the People's Republic of China does not appear to prohibit electronic service of process. Vogt Declaration at ¶ 9. The proposed Temporary Restraining Order provides for issuance of a summons in the name of "THE OWNER AND/OR OPERATOR OF PINKFLOYDMERCH.COM" that shall apply to the Defendant in accordance with Federal Rule of Civil Procedure 4(b). As such, Plaintiff respectfully requests this Court's permission to serve Defendant via e-mail and/or electronic publication.

## V.    A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411, 421 (4th Cir. 1999); Fed. R. Civ. P. 65(c). Because of the strong and unequivocal nature of Plaintiff's evidence of counterfeiting, infringement, and unfair competition, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than One Thousand U.S. Dollars ($1,000.00). *See, e.g.*, *Monster Energy Co. v. Chen Wensheng*, 136 F. Supp. 3d 897, 910-11 (N.D. Ill. 2015).

## VI.    CONCLUSION

Plaintiff's business, its PINK FLOYD brand, and consumers are being irreparably harmed. Without entry of the requested relief, the sale of Counterfeit PINK FLOYD Products will continue

to lead prospective purchasers and others to believe that Defendant's products have been manufactured by or emanate from Plaintiff. Therefore, entry of an *ex parte* order is necessary to protect Plaintiff's trademark rights, to prevent further harm to Plaintiff and the consuming public, and to preserve the status quo. In view of the foregoing and consistent with previous similar cases, Plaintiff respectfully requests that this Court enter a Temporary Restraining Order in the form submitted herewith and set a status hearing before the expiration of the Temporary Restraining Order at which hearing Plaintiff intends to present a motion for preliminary injunction.

DATED:  June 6, 2024                                    Respectfully submitted,

*/s/ Keith A. Vogt*
Keith A. Vogt (Bar No. 6207971)
Keith Vogt, Ltd.
33 West Jackson Boulevard, #2W
Chicago, Illinois 60604
Telephone: 312-971-6752
E-mail:  keith@vogtip.com

**ATTORNEY FOR PLAINTIFF**

28