IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PINK FLOYD (1987) LIMITED,

    Plaintiff,

v.

THE OWNER AND/OR OPERATOR OF
PINKFLOYDMERCH.COM,

    Defendant.

Civil Action No.: 1:24-cv-04711

Judge Matthew F. Kennelly

Magistrate Judge Sheila M. Finnegan

## DECLARATION OF THOMAS SCHLEGEL

I, Thomas Schlegel, declare and state as follows:

1. This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, I could and would testify to the statements made herein.

2. I am an attorney for Pink Floyd (1987) Limited ("PFL") of the United Kingdom. For years, I have represented PFL in its Intellectual Property matters. I am knowledgeable about or have access to business records concerning the brand protection operation of PFL. I make this declaration from matters within my own knowledge save where otherwise stated.

3. Plaintiff PFL is a Limited company organized and existing under the laws of the United Kingdom.

4. PFL is the business entity for the iconic band PINK FLOYD. PINK FLOYD has been in existence since 1965 and was inducted into the Rock & Roll Hall of Fame in 1996.

5. Plaintiff is the official source of PINK FLOYD authentic products:

1



www.pinkfloyd.com

6. PFL is the owner of several trademark registrations for the PINK FLOYD Trademarks including U.S. Trademark Registration Nos. 2,194,702; 3,247,700; 4,236,037; 5,521,572; 6,514,317; 5,435,348; 6,784,353; and 6,862,397.

7. The PINK FLOYD Trademarks are valid, subsisting, and in full force and effect. True and correct copies of the federal trademark registration certificates for the above PINK FLOYD Trademarks are attached hereto as **Exhibit 1**.

8. The PINK FLOYD Trademarks are distinctive and identify the merchandise as goods from PFL.

9. The PINK FLOYD Trademarks qualify as famous marks, as that term is used in 15 U.S.C. §1125 (c)(1) and have been continuously used and never abandoned.

10. PFL has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the PINK FLOYD Trademarks. As a result, products bearing the PINK FLOYD Trademarks are recognized and exclusively associated by consumers, the public, and the trade as being products sourced from PFL.

11. The success of the PINK FLOYD brand has resulted in its significant counterfeiting. Consequently, PFL is implementing an anti-counterfeiting/infringement program and is investigating suspicious websites and online marketplace listings identified in proactive internet sweeps. PFL has identified numerous internet stores linked to fully interactive websites and marketplace listings on various platforms including the fully interactive commercial Internet store operating under the Defendant Domain Name PINKFLOYDMERCH.COM (the "Defendant Domain Name"), which was offering for sale, selling, and importing counterfeit products in connection with counterfeit versions of PFL's federally registered PINK FLOYD Trademarks (the "Counterfeit PINK FLOYD Products") to consumers in this Judicial District and throughout the United States. Despite PFL's enforcement efforts online, the Defendant has persisted in creating the Defendant Domain Name.

12. I perform, supervise, and/or direct investigations related to internet-based infringement of the PINK FLOYD Trademarks. Our investigation shows that Defendant is using the Defendant Domain Name to sell Counterfeit PINK FLOYD Products from foreign countries in Asia to consumers in the U.S. and elsewhere. I, or someone working under my direction, analyzed the Defendant Domain Name and determined that Counterfeit PINK FLOYD Products were being offered for sale to the United States, including Illinois. This conclusion was reached through visual inspection of the products listed for sale on the website, the price at which the Counterfeit PINK FLOYD Products were offered for sale, other features commonly associated with websites selling counterfeit products, because Defendant offered shipping to the United States, including Illinois, and because Defendant and its website do not conduct business with PFL and do not have the right or authority to use the PINK FLOYD Trademarks for any reason. True and correct copies of screenshot printouts showing the active Defendant Domain Name reviewed

are attached as **Exhibit 2**.

13. Upon information and belief, Defendant facilitates sales by designing the Defendant Domain Name so that it appears to unknowing consumers to be an authorized online retailer, outlet store or wholesaler selling genuine PINK FLOYD Products. The Defendant Domain Name looks sophisticated and accepts payment in, and not limited to, U.S. dollars via credit cards, Western Union, Amazon and PayPal. The Defendant Domain Name includes images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Defendant further perpetuates the illusion of legitimacy by offering customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos. PFL has not licensed or authorized Defendant to use its PINK FLOYD Trademarks, and the Defendant is not an authorized retailer of genuine PINK FLOYD Products.

14. Upon information and belief, Defendant also deceives unknowing consumers by using the PINK FLOYD Trademarks without authorization within the content, text, and/or meta tags of its website in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for PINK FLOYD Products. Additionally, upon information and belief, Defendant uses other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Domain Name listings show up at or near the top of relevant search results and misdirect consumers searching for genuine PINK FLOYD Products. Further, Defendant utilizes similar illegitimate SEO tactics to propel new online marketplace accounts to the top of search results after others are shut down.

15. Defendant goes to great lengths to conceal its identities and often use multiple fictitious names and addresses to register and operate its Defendant Domain Name. For example,

Defendant's name and physical address used to register the Defendant Domain Name are fictitious. The Defendant Domain Name uses privacy services that conceal the owners' identity and contact information. Such Defendant Domain Name registration patterns are one of many common tactics used by Defendant to conceal its identities, the full scope and interworking of its massive counterfeiting operation, and to avoid being shut down.

16. In addition to operating under a fictitious name, Defendant in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendant will often register new internet stores under new aliases once they receive notice of a lawsuit.

17. Counterfeiters such as Defendant typically operate multiple credit card merchant accounts as well as, and not limited to, Amazon, PayPal, and Alipay accounts behind layers of payment gateways so that they can continue operation in spite of PFL's enforcement efforts. Upon information and belief, Defendant maintains off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court.

18. Monetary damages alone cannot adequately compensate PFL for ongoing infringement because monetary damages fail to address the loss of control of and damage to PFL's reputation and goodwill. Furthermore, monetary damages are difficult, if not impossible, to completely ascertain due to the inability to fully quantify the monetary damage caused to PFL's reputation and goodwill by acts of infringement.

19. PFL will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 6, 2024.

*Thomas Schlegel*
Thomas Schlegel